IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| SUSAN J. PORRECO | : | Case No.  05-10555-TPA |
| *Debtor* | : | Chapter 7 |
| | : | |
| JOSEPH B. SPERO, TRUSTEE, | : | |
| *Movant* | : | Related to Document Nos. 256, 231 |
| v. | : | |
| | : | |
| SUSAN J. PORRECO, | : | |
| *Respondent* | : | |

*Appearances:*  Donald R. Calaiaro, Esq., for the Debtor
Joseph B. Spero, Esq., for Chapter 7 Trustee
Guy C. Fustine, Esq., for Louis J. Porreco

## MEMORANDUM OPINION

Currently before the Court is the ***Motion for Reconsideration and Request for Setoff*** filed at Document No. 256 ("*Reconsideration Motion*") by the Chapter 7 Trustee, Atty. Joseph B. Spero ("Chapter 7 Trustee").  Susan J. Porreco ("Debtor") filed a ***Response*** at Document No. 261 in opposition to the *Reconsideration Motion.*  For the reasons stated herein, the *Reconsideration Motion* will be granted and the prior *Order* to which the *Reconsideration Motion* is directed, vacated.[1]

---

[1] The Court's jurisdiction under *28 U.S.C. §§157* and *1334* was not at issue.  This is a core proceeding pursuant to *28 U.S.C. §§157(b)(2)(A), (B)* and *(O)*.

1

### *FACTUAL AND PROCEDURAL BACKGROUND*

On February 25, 2005, the Debtor filed a voluntary Petition under Chapter 7 of the Bankruptcy Code. This case originally arose during an acrimonious divorce proceeding between the Debtor and Louis J. Porreco ("Mr. Porreco") filed in the Pennsylvania state court system. The Debtor listed Mr. Porreco as an unsecured creditor holding a claim in the amount of $1 with a notation "see attached for description of claim." The attachment states that "[D]ebtor has been involved in a long standing divorce proceeding in Erie County, PA, involving very substantial equitable distribution claims. The matter is currently on remand from the Pennsylvania Supreme Court."

On the Schedules filed with the Petition, the Debtor identified her personal property, listing its total value as "$12,180" on the date of filing, all of which she claimed as exempt. On Schedule "I", the Debtor alleged an income as of the date of filing of "zero" and on Schedule "J" she listed monthly expenses totaling $3,723.

Soon after the initial bankruptcy filing, Attorney Gary V. Skiba ("Atty. Skiba") was appointed Chapter 7 Trustee. On April 6, 2005, the First Meeting of Creditors pursuant to *11 U.S.C. §341* was conducted. In his Minutes from the *§341* Creditors' Meeting, Atty. Skiba noted that "the meeting was closed; Trustee to file report at a later time; looking into divorce action."

On June 6, 2005, the United States Trustee ("UST") filed a *Motion to Extend Time to File Motion to Dismiss Pursuant to 11 U.S.C. § 707(b)*. The UST asserted, *inter alia*, that it had been advised by Debtor's Counsel that, for a period of time, the Debtor received alimony payments

in the amount of $17,000 per month and that the matter concerning alimony was being contested in state court but had been remanded to the PA Superior Court. Until the matters of alimony and equitable distribution were resolved, the UST claimed she would be unable to determine whether the Debtor possessed the ability to make any payments to her creditors.

Approximately at the same time, Mr. Porreco filed a *Complaint to Determine Dischargeability under 11 U.S.C. § 523(a)(15)* at Adversary No. 05-1124 ("Complaint"). On May 10, 2005, Mr. Porreco filed Proof of Claim at Claim No. 1 in the bankruptcy case in the amount of $256,000.[2] The basis for Mr. Porreco's claim was a June 8, 2000 Order of the Court of Common Pleas of Erie County, PA which provided that "in the event that the appeal of the Plaintiff, Mr. Porreco, is granted, Mr. Porreco would be entitled to a credit of any funds paid by him." The payments were specifically identified as being for alimony *pendente lite*, advances for counsel fees and unpaid loans. As a result of the November 16, 2005 state court order, the Court stayed further action on the *Complaint* until final conclusion of the pending state court matters.

On July 14, 2005, at Document No. 18, Atty. Skiba filed a *Motion to Approve Settlement* in which Mr. Porreco agreed to withdraw his claim and pay to the Trustee an amount sufficient to pay all other unsecured creditors in full plus Atty. Skiba's expenses of administration as Trustee. In response to the *Motion to Approve Settlement*, The Debtor filed a *Motion to Convert Case to Chapter 13* with an accompanying *Objection* to the proposed settlement. The Debtor asserted that her claims against Mr. Porreco could have a value in excess of $1,000,000 and that

---

[2] The amount of filed, unsecured claims in this case, including the $256,000 claim of Mr. Porreco, total $321,854. Thus, Mr. Porreco's potential claim of $256,000 comprises approximately 80% of the unsecured creditor pool.

3

"experienced" counsel was willing to prosecute the pending state court matters on a contingency fee basis.

In further support of her request to convert the matter to Chapter 13, the Debtor reported that she had obtained employment as a real estate agent. Therefore, she believed she could adequately fund a Chapter 13 plan and pay a 100% dividend to all unsecured creditors, excluding the claim of Mr. Porreco, which the Debtor asserted would be valued at "zero" upon the conclusion of the state court action. Atty. Skiba and Mr. Porreco opposed the conversion. By *Opinion and Order* dated November 16, 2005, filed at Document No. 57, the Court refused the *Motion to Approve Settlement* and granted the Debtor's *Motion to Convert Case to Chapter 13*. Upon conversion of the matter to Chapter 13, Atty. Skiba's role as Chapter 7 Trustee terminated.

The *§341* Meeting of Creditors in the Chapter 13 case was held on December 21, 2005. On March 22, 2006, in the context of the Chapter 13 case, the Debtor filed her *Objection* to the claim of Mr. Porreco. The Debtor asserted that Mr. Porreco's claim remained "undetermined" in state court, that the Bankruptcy Court should abstain from hearing it, and, the Chapter 13 Trustee should hold in escrow, any distribution to Mr. Porreco until his claim was finally determined by the Court.

Thereafter, two orders were entered on August 28, 2006. In the first, the Court voluntarily abstained from hearing the state court matters related to Mr. Porreco's Proof of Claim. In the second, at the request of the Debtor, the Court appointed Attorney Joanne Ross Wilder as Special Counsel, retained on a contingency fee basis, to represent the Debtor in the pursuit of her

state court equitable distribution claims. This *Consent Order* proposed by the Parties, further required that:

> "the Debtor shall continue to make her payments to the Chapter 13 Trustee in accordance with her Chapter 13 Plan and the Chapter 13 Trustee shall escrow all distributions to the unsecured creditors until the Louis Porreco claim is adjudicated by a final order in State Court." *Order* of August 28, 2006, Document No. 100.

In March, 2008, the Debtor ceased making Chapter 13 plan payments. Eventually, the Chapter 13 Trustee moved to dismiss the case. The Trustee's Motion was continued for a period of time to allow conclusion of the state court matters involving Mr. Porreco. Ultimately, the Debtor lost her battle in the Pennsylvania state courts. She was unsuccessful in her equitable distribution claims and Mr. Porreco was successful in his claim against the Debtor. While this Court is uncertain of the amount of Mr. Porreco's final claim, it appears from an undisputed informational letter filed at Document No. 214 that Mr. Porreco may have a claim in the amount of $406,000, well above the original $256,000 claimed.

On April 23, 2009, the Debtor filed a *Motion to Convert Case from Chapter 13 to Chapter 7*. In her Motion, the Debtor admitted that the litigation with Mr. Porreco in state court would produce no assets for the estate.[3] Furthermore, the Debtor claimed she was physically attacked in 2008 which rendered her temporarily unable to work. This injury coupled with the declining real estate market allegedly prevented the Debtor from earning sufficient income to make the required payments pursuant to her Chapter 13 Plan.

---

[3] On July 3, 2008, the Debtor filed an Amended Schedule "B" which added numerous, previously unidentified, items of personal property. The total value of the personalty listed was set at $46,640. The Debtor did not, and to date has not, filed an amended claim of exemptions.

By Orders dated May 29, 2009 and June 1, 2009, the case was reconverted to Chapter 7. In light of the re-conversion, consideration of the *Application for Compensation* filed by the Debtor's Counsel at Document No. 202 was deferred until the time of final distribution in the Chapter 7 case. Atty. Spero was appointed as the new Chapter 7 Trustee to serve in the Chapter 7 case. On June 17, 2009, the Debtor filed the required *Rule 1019 Conversion Report*, however, the Debtor did not file the required Amended Schedules which were to accompany her *Rule 1019 Conversion Report*.

The Chapter 13 Trustee filed her *Final Report and Account* on July 23, 2009, at Document No. 229. The Chapter 13 Trustee stated in her *Report*

> "[t]he case was filed on 2/25/05 and confirmed on 12/27/05" and that "[t]he case was subsequently CONVERTED AFTER CONFIRMATION." (emphasis in original). The Chapter 13 Trustee disbursed the balance on hand, $60,740.01 to Chapter 7 Trustee.

Also on July 23, 2009, the Debtor filed her *Motion to Pay Administrative Claims and Release Funds to the Debtor Following the Conversion of her Case from a Chapter 13 to a Chapter 7 Case* at Document No. 231 ("Administrative Claim Motion"). The Debtor sought to recover the funds that the Chapter 13 Trustee had transferred to the new Chapter 7 Trustee and to utilize those funds to pay the outstanding, claimed attorney fees due her attorney, retaining the balance of the funds for her personal use.

In Paragraph 7 of the *Administrative Claim Motion*, it is alleged that "[t]he Debtor has fought for confirmation of her plan for 3 years without success because of a never ending

6

litigation with her ex-husband, Louis Porreco and a fight over his disputed claim." At Paragraph 18 of the *Administrative Claim Motion*, the Debtor references *11 U.S.C. §1326* of the Bankruptcy Code. *Section 1326(a)(1)* directs the Debtor to commence making payments not later than 30 days after the filing of the plan and to *Section 1326(a)(2)* which provides that

> "[a] payment made under paragraph (a)(1) shall be retained by the trustee until confirmation or denial of confirmation. If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan as soon as practicable. If a plan is not confirmed, the trustee shall return any such payments not previously paid and not yet due and owing to creditors pursuant to paragraph (3) to the debtor, after deducting any unpaid claim allowed under section 503(b)...."

*11 U.S.C. §1326(a)(2)*.

In his *Response* to the *Administrative Claim Motion* the Trustee acknowledged that "the Debtor could have requested interim confirmation of her plan pending the outcome of the matters involving her ex-husband." *See Chapter 7 Trustee's Response to Debtor's Motion to Pay Administrative Claims and Release Funds to Debtor*, August 24, 2009, Document No. 247, ¶7.

On August 31, 2009, a hearing to consider the *Administrative Claim Motion* was held. The Court has reviewed the audio file from the August 31, 2009 hearing. At the hearing, Debtor's Counsel stated that the Debtor had sought confirmation of her Chapter 13 Plan but was unable to obtain confirmation based on Mr. Porreco's repeated objections. *Audio Transcript of Proceedings* dated Aug. 31, 2009, 10:02:04 to 10:02:28. Debtor's Counsel referenced the clarity of applicable law, that is, where a case is not yet confirmed, all payments made during the Chapter 13 are to be returned to the Debtor since they are not property of the estate. *Id* at 10:03:14 to 10:03:32, 10:06:28 to 10:06:54. Similarly, Debtor's Counsel acknowledged that if confirmation had previously

occurred, the monies in question should properly be distributed to creditors since the fund would be property of the estate. *Id* at 10:03:14 to 10:03:32.

Also at the August 31st hearing, the Chapter 7 Trustee acknowledged that the Debtor or some other interested party "could have requested" that the Chapter 13 Plan be confirmed on an interim basis pending the outcome of the ongoing state court litigation between the Debtor and Porreco.[4]  Admittedly, according to the Chapter 7 Trustee, such a request was never made. *Id* at 10:10:26 to 10:10:41. Consistent with the Debtor Counsel's observation, the Chapter 7 Trustee acknowledged that if the Chapter 13 Plan had been confirmed, all the monies currently held would rightfully be designated to the unsecured creditors pursuant to the Plan. If any undistributed funds were held by the Chapter 13 Trustee, those monies would be turned over to the Chapter 7 Trustee. *Id* at 10:10:41 to 10:10:55.

At this point in the proceeding, the only perceived disputes remaining between the Parties related to: (1) the equities of returning the monies to the Debtor; (2) whether the payments made by the Debtor were from postpetition earnings of the Debtor; and, (3) concerning the proper source of payment for Chapter 7 Trustee's counsel fees. Counsel for the Debtor argued that all of the money should be returned to the Debtor. Even though the Debtor had no objection to the fees requested, she contends the fees should be paid out of the funds that were paid to the Chapter 13

---

[4]  There is no qualitative difference in this District between the standard plan confirmation order and the standard interim plan confirmation order. The language is basically identical. As in this case they are typically entered with the consent of the debtor. Each creates vested rights in creditors with the later simply containing agreed upon conditions precedent to be performed by a debtor prior to entry of the former and allowing for creditor distributions to occur pending completion of the conditions precedent and entry of the final confirmation order. *See In re Morrison,* 375 B.R. 179 at 190, FN 22 (Bankr. W.D. Pa. 2007).

Trustee in this matter. Counsel for Debtor was then directed to file copies of tax returns for the tax years in question in support of the Debtor's position that the payments came solely from post petition earnings.

Upon review of the tax returns that were filed, the Court was satisfied that the payments made by the Debtor were derived solely from post petition earnings. Through statements in the pleadings and representations made by Counsel at the argument held during the August 31st hearing and in all pleadings leading up to the time of argument, both Parties continually represented that the Debtor's Plan had never been confirmed. Based upon the foregoing posture of the case, the Court felt no need to scour the record but accepted those representations as true without further independent review of the record.

By Order dated September 9, 2009, relying on the pleadings filed by the Debtor and Chapter 7 Trustee and the representations of Counsel at the August 31st hearing, the Court granted the Debtor's *Administrative Claim Motion*. As a result, the Chapter 7 Trustee was directed to turn over to the Debtor the $60,740.01 held by him. The Court also granted the pending *Application for Compensation* filed by Debtor's Counsel since those fees were properly the responsibility of the Debtor and she had no objection to payment of the same. The *Reconsideration Motion* was timely filed on September 21, 2009 by the Chapter 7 Trustee.

### *DISCUSSION*

In his *Reconsideration Motion* the Chapter 7 Trustee asks that the Court reconsider its September 9, 2009 *Order* finding that the monies being held by the Chapter 7 Trustee are not

9

property of the estate and directing that payment of same be turned over to the Debtor. Alternatively, the Chapter 7 Trustee also requests that in the event that the Court denies the reconsideration request, the Court grant the Trustee a right of setoff thereby permitting the Trustee to retain the monies held by him and to setoff those funds against the amount of personal property listed by the Debtor on Amended Schedule "B" to the extent not previously claimed as exempt. The Debtor opposes the *Reconsideration Motion.* In her October 27, 2009 *Response* at Document No. 261, she reiterates at Paragraph 9 that "[t]he Debtor offered a confirmation of the Plan on an interim basis and that request was opposed by Lou Porreco and that approach was abandoned." *Debtor's Response to Trustee's Motion for Reconsideration and Request for Setoff*, October 27, 2009, Document No. 261, ¶9.

A motion for reconsideration brought under *Fed.R.Civ.P 59(e)*, is made applicable to bankruptcy proceedings by *Fed.R.Bankr.P. 9023*. "The purpose of a motion to reconsider is to correct 'manifest errors of law or fact, or, to present newly discovered evidence'." *Dow Chemical Canada, Inc.*, 2010 WL 27485, at *1 (D.Del., Jan. 5, 2010) *citing Max's Seafood Café by Lou-Ann, Inc. V. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).

> "[A] judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment: or (3) the need to correct a clear error of law or fact or to prevent manifest injustice."

*Max's Seafood*, 176 F.3d at 677.

The Court's review of this matter prior to entry of its September 9th *Order* was limited to the pleadings and audio recording of the August 31st hearing held in connection with the Debtor's

*Administrative Claim Motion.* As should be evident from the detail of events outlined in this *Memorandum Opinion*, the Court has now thoroughly reviewed the entire record in this case.[5]

As a result of its comprehensive review of the record, the Court has found that the Parties did not accurately reference the record at the August 31st hearing or in their pleadings. Important and extremely relevant to the Court's decision in this matter is that the Debtor's Chapter 13 Plan dated August 24, 2005 was in fact confirmed by *Order* dated December 27, 2005.[6] See Document No. 65. Pursuant to the terms of the *Confirmation Order*, the Debtor's monthly plan payment was increased to $2,000. The plan was approved on an interim basis and was made subject to resolution of the equitable distribution claim. A final plan confirmation hearing was set for March 23, 2006.

On March 31, 2006, the first of many orders granting continuances in regards to the final confirmation hearing while the state court matters remained pending, was entered. Because the ultimate amount of Mr. Porreco's claim was unknown, and therefore, the total pool of unsecured creditors undeterminable, the *Order* provided that "[n]o distributions will be made to unsecured creditors without further order of court."

---

[5] On September 22, 2009, the Honorable Warren W. Bentz retired from the Bench of the U.S. Bankruptcy Court for the Western District of Pennsylvania, following which time Chief Judge Thomas P. Agresti assumed responsibility for this and all of his other pending cases.

[6] In fairness to Counsel, it should be noted that a cursory review of the main PACER docket might well fail to detect the existence of a confirmed plan because the entry for the December 27, 2005 Order describes it as an "Order Continuing Hearing ... Confirmation hearing to be held on 3/23/2006," without also indicating there had been an interim confirmation. Thus, someone reviewing the docket would not know there had been a confirmation unless he or she "clicked through" and read the actual Order.

Given the state of the pleadings in these matters and the arguments and representations of Counsel up to and including the August 31st hearing, to say the least, the Court was surprised when it located the December 27, 2005 *Confirmation Order* filed at Document No. 65. The *Confirmation Order* clearly states that the Chapter 13 plan dated August 24, 2005 is confirmed. *Order of Court*, December 27, 2005, Document No. 65. In addition, the record in this case further reflects the Chapter 13 Trustee's position in this regard. Her *Final Report and Account* filed on July 23, 2009 at Document No. 229, to which no objection was raised by the Debtor, clearly states that:

> "[t]he case was filed on 2/25/05 and confirmed on 12/27/05. The case was subsequently CONVERTED AFTER CONFIRMATION." (emphasis in original).

Accordingly, the Parties, including the Court, have been operating under the misconception that no *Confirmation Order* was entered in this case. It is now clear that assumption simply is not correct.

At the August 31st hearing, Debtor's Counsel correctly set forth on the record a statement of applicable law when he reiterated that the law was "very clear" where there is an unconfirmed Chapter 13 case, all payments made during the failed Chapter 13 case are to be returned to the Debtor since not property of the estate. *Audio Transcript of Proceedings* dated August 31, 2009, 10:03:14 to 10:03:32.

Based on the representations and admissions of Counsel prior to entry of the September 9, 2009 Order to the effect that there had "never been a Confirmation Order" the *Order* was entered. Once the Court satisfied itself, following review of the subsequently filed tax returns

that the payments made during the Chapter 13 case came from post petition earnings of the Debtor, consistent with applicable law under the assumed facts, the Court granted the Debtor's *Administrative Claim Motion*. Also, since under the scenario presented, no party other than the Debtor possessed an interest in the fees requested in Counsel's *Application for Compensation*, the Court also granted the requested fees.

At all relevant times in this matter, Debtor's Counsel has correctly argued and acknowledged that "the case law is very clear" in this matter, that is, if confirmation had previously occurred, then the money currently held by the Chapter 7 Trustee should be distributed to creditors. As is now clear from the Court's full review of the entire record, confirmation did in fact occur in this case.

>*11 U.S.C. §1326* provides in pertinent part:
>
>**§ 1326. Payments**
>
>(a)(1) Unless the court orders otherwise, the debtor shall commence making payments not later than 30 days after the date of the filing of the plan or the order for relief, whichever is earlier, in the amount-
>.......
>
>(2) A payment made under paragraph (1)(A) shall be retained by the trustee until confirmation or denial of confirmation.  If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan as soon as is practicable.......
>
>*11 U.S.C. §1326.*

As Judge Joseph Cosetti, formerly of this Court, stated over 20 years ago in *In re Waugh,* 82 B.R. 394, 400 (Bankr. W.D. Pa. 1988):

> "The mandate of 11 U.S.C. § 1326 creates a trust of chapter 13 payments received during the pendency of a confirmed plan. The trust created should not be dependent on the speed of its distribution. The valid confirmation order of the Bankruptcy Court should not be made a nullity by a later failure of the debtor to observe a confirmed plan."

*Id.*

All Parties agree that, assuming the Chapter 13 Plan was previously confirmed, the appropriate approach under the facts of this case would be to distribute the monies currently held to creditors of the Debtor.

> "When debtors have voluntarily paid funds to the Chapter 13 Trustee pursuant to the terms of a confirmed plan, the creditors' rights to receive funds pursuant to the confirmed plan vests at the time the trustee receives the funds and debtors can no longer retain any reasonable expectation that such funds will be returned to them under any circumstances, including a conversion or dismissal." *In re Halpenny,* 125 B.R. 814, 815-16 (Bankr. D. HI 1991).

The *General Court Procedures* of this Court are in accord with this view. *Chapter 13 Procedure #4(G)* provides:

> In the event of conversion or dismissal following the confirmation of a plan, then the Trustee shall distribute all funds received prior to the effective date of the conversion or dismissal, in accordance with the terms of the confirmed plan. *Court Procedures Manual of the United States Bankruptcy Court for the Western District of Pennsylvania, Part III, Chapter 13 Procedures*, Procedure No. 4, ¶9 (adopted July 1, 2004.)

Once a Chapter 13 Plan is confirmed, payments received by the Trustee prior to conversion or dismissal of the case belong to the creditors and are not to be returned to the Debtor. *In re Chase,* 2008 WL 2309529, Bankr. No. 03-10092 (Bankr. W.D. Pa., June 4, 2008).

**CONCLUSION**

For all of the above reasons, the Court now concludes that the funds currently held by the Chapter 7 Trustee must remain for distribution to creditors in accordance with the priority provisions of the *Bankruptcy Code*. Both Counsel for the Debtor and the Chapter 7 Trustee mistakenly took the position and represented to the Court that no confirmation had previously been entered. In originally entering its Order directing return of the funds to the Debtor, the Court relied on these representations. That manifest error in fact lead to a conclusion of law directly opposite the proper conclusion based on the actual facts of the case.

The Parties agree that if a Confirmation Order was entered in this case, upon conversion to Chapter 7, the funds held by the Chapter 13 Trustee are to be transferred directly to the Chapter 7 trustee for distribution to creditors and are not returned to the Debtor. Clearly, that is the only proper result under the facts of this case. Therefore, the Chapter 7 Trustee's *Motion for Reconsideration* will be granted. Additionally, since parties other than the Debtor have an interest in the amount of allowed fees, the *Order* which previously granted the *Application for Compensation* filed by Debtor's Counsel, will also be vacated and the issue will be deferred until the time of final distribution in the Chapter 7 case.

An appropriate Order will be entered.

Dated: April 7, 2010

_____
Thomas P. Agresti, Chief Judge
United States Bankruptcy Court

Case Administrator to serve:
    Donald R. Calaiaro, Esq.
    Joseph B. Spero, Esq.
    Guy C. Fustine, Esq.